## BANDFIELD *v.* EDDY.

1. AUTOMOBILES—NEGLIGENCE—PROXIMATE CAUSE—INTERSECTIONS—RIGHT OF WAY—SPEED.

   In nonjury action for damages by owner of ambulance northbound on trunk-line highway against eastbound motorist on gravel side road who entered intersection at slow speed when plaintiff's vehicle was plainly visible and approaching at speed of 70 miles an hour, evidence supported finding of trial judge that defendant was negligent and that such negligence was the proximate cause of the accident, since, under the circumstances, plaintiff had the right of way irrespective of the fact that the stop sign was not in place (CL 1948, § 256.320).

2. SAME—CONTRIBUTORY NEGLIGENCE—AMBULANCE DRIVER—INTERSECTIONS—SPEED—EVIDENCE.

   Finding of trial court in nonjury action that driver of ambulance, containing a patient bound for a hospital, who proceeded at 70 miles an hour on dry trunk-line highway in country on a clear day without sounding siren where the visibility was good and only car in sight was defendant's car which ambulance driver, while some 300 feet from intersection, observed slow down as if to stop while about 2 or 3 car lengths from corner was not guilty of contributory negligence, was not contrary to the preponderance of the evidence.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur, Automobiles, §§ 40, 89, 294, 298.

Appeal from Ionia; Davis (Morris K.), J. Submitted June 7, 1949. (Docket No. 1, Calendar No. 44,348.) Decided September 8, 1949.

Case by Arthur Bandfield against Mabel Eddy, administratrix of the estate of George Comstock, deceased, for damages to automobile. Judgment for plaintiff. Defendant appeals. Affirmed.

*Eldred & Eldred,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Edward D. Wells,* of counsel), for defendant.

NORTH, J. This suit arises from the collision between 2 automobiles at the intersection of the north-and-south concrete trunk-line highway M–66 and an east-and-west gravel highway, about 2 miles south of Ionia. Trial in the circuit court without a jury resulted in a judgment for plaintiff. Defendant has appealed.

Plaintiff's vehicle was proceeding north on M–66. Defendant was travelling east on the intersecting highway. The accident occurred in the daytime, and the road and visibility conditions were normal. Defendant's decedent, George Comstock, to whom we refer as defendant, was killed in the accident. He was 85 years of age, had formerly been a rural mail carrier serving a route over these same highways and, hence, was familiar with the intersection. As to his negligence, the record supports the following from the opinion of the circuit judge:

"Under the undisputed facts Mr. Comstock approached M–66, a State trunk-line highway, from the west on a side road which had a gravel surface. As he approached the trunk-line highway he slowed down almost to a stop. I am satisfied that such slowing down gave every indication that he was go-

ing to stop and that the driver of the ambulance had every reason to believe Mr. Comstock was going to stop. Instead of stopping Mr. Comstock proceeded into the intersection and came to almost a complete stop in about the center thereof. It is obvious that Mr. Comstock either made no observations as to traffic on the State trunk line or ignored any traffic he did observe. Mr. Comstock was familiar with the roads in question. Clearly Mr. Comstock was guilty of negligence and I find that such negligence was the proximate cause of the accident."

On the argument in this Court plaintiff's counsel admitted there was no stop sign on the crossroad on which defendant approached the intersection. It is urged in behalf of defendant that since there was no such sign defendant was not bound as a matter of law to stop before entering the intersection. Even so, still under this record defendant was clearly guilty of negligence. Plaintiff's vehicle was at the right of defendant's as the 2 approached the intersection and had the right of way. CL 1948, § 256.320 (Stat Ann § 9.1580). When plaintiff's car was approximately 300 feet south of the intersection and plainly visible to defendant it was travelling about 70 miles per hour, at which rate it would reach the intersection in approximately 3 seconds. Defendant was then 2 or 3 car lengths (30 to 40 feet) west of the intersection, had slowed down to 5 to 10 miles per hour, and "came to almost a complete stop in about the center" of the intersection. The trial court's finding that defendant was guilty of negligence which was the proximate cause of this collision is amply supported by the record.

The question of contributory negligence chargeable to plaintiff presents a closer factual issue. Plaintiff's automobile, which he used as an ambulance, was a Buick sedan type with the standard or usual chassis, but with the right-hand door rebuilt

so a patient could be placed inside in a reclining position. At the time of the accident this vehicle was being driven by plaintiff's adult son. He was accompanied by his father and a patient who, under a doctor's orders, was being conveyed in plaintiff's ambulance to a hospital in Ionia. This vehicle was equipped with a siren but the siren was not sounded on the occasion of this accident. The driver of plaintiff's automobile, when travelling about 70 miles per hour and approximately 300 feet from the intersection, first saw defendant's car 2 or 3 car lengths west of the pavement and proceeding at 5 to 10 miles per hour. Assuming defendant would stop, plaintiff's driver did not apply his brakes immediately but he did release the accelerator and somewhat slackened his speed. He testified if he had applied his brakes: "It would have shaken us up pretty well, but I imagine we might have been able to" stop in a distance of 300 feet. He further testified that when "probably" 100 feet from the intersection and when his car was travelling approximately 60 miles per hour he first realized defendant's car was coming upon the pavement, and "I put on the brakes and sounded the horn, immediately." Plaintiff's car left skid marks on the pavement from a point approximately 100 feet south of the intersection. In an effort to avoid the collision after plaintiff's driver saw he could not pass in front of the other car, he veered plaintiff's car to the left. When the impact occurred the front of defendant's car was east of the center line of the pavement and the rear of his car was about 3 to 4 feet east of the westerly edge of the pavement, and defendant's car was moving less than 5 miles per hour. One witness testified defendant had come to a full stop. At the point of accident the pavement is 20 feet wide with a 6-foot shoulder. The right front of plaintiff's vehicle collided with the right rear of defendant's car. Plain-

tiff recovered $1,188.78 for damages to his ambulance.

In reaching the conclusion that plaintiff's driver was not guilty of contributory negligence the trial judge in his opinion stated:

"Was the driving at 70 miles per hour negligence? Such a speed was not unlawful unless the condition of the road and the condition of the traffic made driving at such speed unsafe. When the ambulance was 300 feet from the intersection the road was dry, clear of traffic and visibility was good. The only car in sight was the Comstock car which the ambulance driver saw slowing down as if about to stop at the intersection. At that point I can't see why the ordinary prudent man would not consider such a speed safe. Defendant made much of the fact that the ambulance could have been stopped had the driver started to stop at a distance of 300 feet. Had the Comstock car not slowed down as though it were going to stop that's just what the ambulance driver could have done and had the Comstock car not so slowed down but had proceeded to cross the trunk line then the ambulance driver would have been guilty of contributory negligence had he failed to stop. The situation then would have brought the case within the case of *Block* v. *Peterson,* 284 Mich 88. In that case both cars were approaching the intersection at about the same speed when each was about 120 feet from the intersection. From that point, plaintiff, in that case, paid no more attention to defendant and assumed that he would stop. In the case at bar Mr. Comstock slowed down as if about to stop and I am satisfied the ambulance driver relied on such indication. When, instead of stopping, the Comstock car proceeded into the intersection the ambulance driver was confronted suddenly with an impossible situation. The cause of this collision was the fact that the ambulance driver was deceived by the fact that the Comstock car appeared about to stop at the trunk line. If the ambulance

driver is to be chargeable with negligence in this case then any advantage of rapid transit on trunk lines will be lost as drivers thereon will have to stop at every intersection and be *sure* what any car at or near the intersection is going to do.

"As pointed out in *Stabler* v. *Copeland*, 304 Mich 1, 7, every intersection case must stand on its own facts. In those intersection cases where the driver on the superior highway has been held guilty of negligence the court has either found that he failed to make proper observation of approaching traffic on inferior roads or that he neglected to take proper precautions to avoid a collision when it was obvious that the driver on the inferior highway was not going to yield the right of way. In the case at bar the ambulance driver observed Mr. Comstock's car when he was a distance of 300 feet from the intersection and continued to observe him until the time of the impact. The defendant's attorney on cross-examination of the ambulance driver established that he could have stopped had he applied his brakes at the point of observation, 300 feet from the intersection. Hence, it was not the failure of the ambulance driver to make proper observation nor the speed of the ambulance which in any way contributed to the accident. It was anything but obvious that Mr. Comstock was going to enter the intersection. His slowing to almost a stop had exactly the contrary indication. Consequently it was not the ignoring of an obvious entry onto the trunk-line highway by the ambulance driver which contributed to the accident. As hereinbefore indicated it was the slowing down of the Comstock car indicating that it would stop which was the cause of this accident. Had the Comstock car driven into the intersection without first slowing down I am satisfied that the ambulance driver could and would have prevented the accident."

We cannot find from this record that the testimony on the issue of contributory negligence pre-

ponderates in the opposite direction from the finding of the trial judge. The judgment entered in the circuit court is affirmed. Costs to appellee.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETH-MERS, BUTZEL, and CARR, JJ., concurred.